**Glen WEBB and Margaret Webb, His Wife, Appellants,**

v.

**The FULLER BRUSH COMPANY.**

**No. 15919.**

United States Court of Appeals Third Circuit.

Argued Feb. 9, 1967.

Decided May 8, 1967.

Avram G. Adler, Philadelphia, Pa. (Freedman, Borowsky & Lorry, Philadelphia, Pa., on the brief), for appellants.

Richard J. van Roden, Philadelphia, Pa. (Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, HASTIE and FORMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

This is a diversity action by Glen and Margaret Webb, husband and wife, for personal injuries allegedly sustained by the wife by reason of negligence and breach of warranty on the part of the defendant, The Fuller Brush Co. The injuries in suit are alleged to have been caused by the continued use of a facial hormone cream sold to Mrs. Webb in 1961 at her Pennsylvania home by a door-to-door salesman of the defendant. A trial resulted in a jury verdict and judgment thereon for the defendant. The plaintiffs have appealed, contending that reversible error appears both in the charge to the jury and in rulings on the admissibility of evidence.

The salesman had recommended the use of the hormone cream for dry skin. The label on the jar suggested daily application of the cream to the face and neck. There was evidence that after using the cream for several months, Mrs. Webb developed what she thought was a toothache, but dental examination showed nothing wrong with her teeth. Her face then broke out in a rash and became swollen. Her mouth became twisted and she experienced difficulty speaking, eating and retaining saliva. She entered a hospital for diagnosis and treatment. Discovering that she was still using the hormone cream, the attending physician ordered its discontinuance. The rash and swelling improved almost immediately but the other difficulties continued. Somewhat later Mrs. Webb developed "Reynaud's phenomenon", a complex of symptoms made manifest by the discoloration of the hands, which turn black and blue as a result of vascular disturbance. By the time this case was tried in February, 1966, some improvement had occurred in all of these conditions.

In his charge the trial judge instructed the jury as follows:

"In order for the plaintiffs to recover against the defendant, they have the burden of proving by a preponderance of the evidence that the hormone cream in question did cause the wife plaintiffs' symptoms and complaints. If you are not convinced by a preponderance of the evidence that the cream caused all of wife plaintiff's complaints, then your verdict must be in favor of the defendant."

After this instruction was given, counsel for the plaintiffs objected that the plaintiffs would erroneously be denied recovery if the jury should find that some but not all of Mrs. Webb's disorders had been caused by the hormone cream. However, the court refused to change the instruction.

■ This was reversible error. The testimony relevant to the causal relation between the hormone cream and the condition complained of was not the same for each of Mrs. Webb's ailments. For example, there was testimony that the rash and the swelling of her face subsided quickly after discontinuance of the use of the cream while other symptoms persisted. More important, there was medical testimony that the development of Reynaud's phenomenon was the consequence of an anxiety neurosis which, in turn, had been caused by facial disorders and disfigurements which followed the use of the cream. This line of

inferential reasoning was strongly contested by the defense. Thus, the jury might well have allowed recovery for some but not all of Mrs. Webb's ills, had the court not directed recovery for all or none. Cf. Chalonec v. Mathiasen's Tanker Industries, Inc., 3d Cir., 1961, 287 F.2d 929. Accordingly, there must be a new trial.

Because the same questions may arise at a second trial, we shall consider at this time certain disputed questions concerning the admissibility of evidence. First, the trial court refused to admit into evidence the entire hospital record made concerning Mrs. Webb while she was a patient. The documents were offered in their totality without any statement of purpose or any differentiation among the items constituting the record. Cf. England v. United States, 5th Cir., 1949, 174 F.2d 466. The appellant now urges for the first time that she wished to introduce the results of certain "exclusion tests" performed at the hospital and duly recorded. Upon retrial the court can make fully informed rulings on admissibility if the materials tendered and the purpose of the tender are specified.

Finally, the appellant sought to show that certain articles had been published concerning the dangers inherent in facial creams containing hormones and recommending the labelling of such preparations with warnings. This offer was made to support the appellant's claim that the appellee should have known that its product might.be dangerous to users. The trial judge rejected the offer as hearsay. This was error. The publication of such articles was presented not to establish that the assertions therein were true, but rather that they should have alerted the appellee to possible hazards. In the light of the court's proper charge that appellee had a duty to warn if it knew or should have known that such a product might be injurious, the exclusion of the evidence was prejudicial to the appellants on an important issue.

It was proper, however, to preclude a physician from testifying as to whether, in his opinion, a warning should have been placed on the jar of facial cream. Once the facts concerning the alleged dangerous character of the product were in evidence, the jury required no expert guidance in reaching a conclusion as to how a reasonable person should have reacted to what the appellee knew or should have known.

The judgment will be reversed and the cause remanded for a new trial.