420 A.2d 729

**COMMONWEALTH of Pennsylvania**

v.

**Ronald H. PERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 12, 1979.

Filed June 27, 1980.

34

David G. Metinko, Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

Following a jury trial, appellant was found guilty of burglary,[1] criminal trespass,[2] and criminal conspiracy.[3] The Honorable Samuel Strauss denied appellant's post–verdict motions and sentenced him to concurrent sentences of two (2) to five (5) years each on the burglary and conspiracy counts, and a suspended sentence on the trespass count.

Appellant's motion for a new trial or in arrest of judgment contained six allegations of error, three of which he now raises on appeal. He complains that the evidence was insufficient to support the burglary and conspiracy charges, that the court improperly refused to dismiss the complaint when the Commonwealth failed to comply with Pa.R.Crim.P. 141(d), and that the court erred in admitting hearsay testimony. We find that the first two allegations have been

1.  18 Pa.C.S. § 3502.

2.  18 Pa.C.S. § 3503.

3.  18 Pa.C.S. § 903.

waived and that the third is without merit. Consequently, we affirm the judgment of sentence.

A brief narration of the events leading to these charges follows. On November 9, 1977, at approximately 2:30 p. m., Mr. Al Balogh was outside his residence and observed a black Cadillac pull into the driveway of the adjacent building, which contained the offices of Drs. Leo and Bowen Caliguiri. A black male exited the car and walked up to the side door of the building. He appeared to be prying at the door with an object and then kicked the door open and entered, shutting the door behind him. Mr. Balogh immediately called the police, and Patrolman Diday and Sergeant McLaughlin arrived at the scene within a minute or so. While Sergeant McLaughlin remained outside, Patrolman Diday entered the building and encountered two men standing in the doorway, one of whom he later identified as appellant. In response to the officer's command not to move, appellant ran down the hallway toward the front of the building. Patrolman Diday apprehended the other male and radioed Sergeant McLaughlin to inform him of appellant's flight out of the front of the building.

Sergeant McLaughlin went to the front of the building and spoke with a woman who was standing there. He next took the police cruiser and drove to a church located about an eighth of a mile from the doctors' office and then to a pharmacy located about one hundred yards from the doctors' office. Failing to locate anyone in the front of the building housing the pharmacy, he drove to the back and there discovered appellant. Sergeant McLaughlin approached appellant, questioned him, and took him back to the police station, where he was identified by Patrolman Diday.

By filing post-verdict motions, appellant took the initial steps necessary to preserve the issues of the sufficiency of the evidence and compliance with Pa.R.Crim.P. 141(d) for appellate review. As our supreme court mandated in *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979), *only* issues presented in this manner will be preserved. Clearly, however, the court in *Gravely* set forth a threshold

test, and a defendant by his actions may thereafter waive the right to review. When post–verdict motions raising the issues are filed, we will presume that the issues are preserved, and we will proceed to an examination of their merits. However, when the record establishes that issues have not been presented by a brief or oral presentation, the presumption is rebutted as to these issues, and we will not consider them. The failure to address issues amounts to a failure to prosecute, indicating abandonment of the issues. The purpose of filing post–trial motions prior to taking an appeal is to assure efficient operation of the judicial process and to offer the trial court an opportunity to rectify errors and obviate the delay and expense of appellate review. *Commonwealth v. Norris*, 256 Pa.Super. 196, 389 A.2d 668 (1978); *Commonwealth v. Grillo*, 208 Pa.Super. 444, 222 A.2d 427 (1966). When defense counsel fails to assert issues before the trial court by way of his brief or oral argument, the trial court is not properly apprised of the contentions of error and is not placed in a position to correct them. We cannot expect the trial court, on the basis of general allegations of error, to grope for the substance of the claim.

The present case demonstrates a record establishment that appellant's first two issues were not preserved. Although he raised six issues in his post–verdict motion, his brief in support of the motion for a new trial and in arrest of judgment, which is contained in the record before us, addresses only one of these issues–the propriety of the reception of alleged hearsay testimony. Thus, the Commonwealth in its brief in opposition to the motion addressed only that single issue, as did Judge Strauss in his opinion in support of the order denying the motion. We find that appellant abandoned these claims by his failure to act and has waived the right to appellate review.[4]

4. The Allegheny County Court of Common Pleas has adopted Local Rule 1123.2 which requires the filing of briefs and deems that the failure to file may constitute abandonment and be met with dismissal with prejudice.

We must, however, consider the merits of appellant's complaint that hearsay evidence was improperly admitted, since he has properly preserved that issue. The controversy arises out of the following exchanges:

"A. [SERGEANT McLAUGHLIN]: At this time, I went to the front of the building, talked to a lady. She stated that the black male come [sic] out.

MR. KELLY: I object, Your Honor.

THE COURT: Don't tell us what the lady said.

MR. KELLY: Your Honor, I would–may we approach the bench?

[sidebar discussion] (N.T. at 67).

Q. [ATTORNEY FOR THE COMMONWEALTH]: ... Now, just isolating yourself to what you did, I would like your testimony to continue.

THE COURT: Not why, but what you did.

A. I went to the front of the building. I talked to a witness.

Q. What did you do?

A. And after this–

MR. KELLY: Your Honor, I object.

THE COURT: All right, the objection is sustained. What did you do, Officer?

A. I left the front of the building, then proceeded immediately by police cruiser to the area of Porter's Pharmacy. (N.T. at 75).

Appellant claims that the effect of this testimony was to relay to the jury that the bystander told Sergeant McLaughlin that the man who ran out of the building went to the pharmacy. He further contends that he was prejudiced because this evidence, combined with his subsequent arrest at that location, pinpointed him as the sought–after actor. We disagree with appellant's conclusions.

It is hornbook law that testimony by a third person as to extra–judicial utterances made by another, when offered to prove the truth of the matter averred therein, constitutes hearsay evidence and is inadmissible at trial

because the competency and veracity of the original speaker are not subject to examination. *Commonwealth v. Dugan*, 252 Pa.Super. 377, 381 A.2d 967 (1977); *Commonwealth v. Johnson*, 201 Pa.Super. 448, 193 A.2d 833 (1963). In the instant case, Sergeant McLaughlin was prevented from repeating the substance of his conversation with the bystander [5] and testified only to his subsequent actions. A witness may relate facts of which he has personal knowledge, such as these statements by the police officer that he had a conversation with the bystander and a description of the action he took, and no question of hearsay is presented. *Commonwealth v. Friedman*, 193 Pa.Super. 640, 165 A.2d 678 (1960); 2 Wharton's Criminal Evidence § 265 (13th ed. C. Torcia 1972). The pitfalls of hearsay testimony are not present in this circumstance because the facts are presented upon the witness' own credit and he is available for examination.

Appellant's objection is grounded upon the argument that the *inference* arising from the officer's statement of his course of conduct effectively puts the bystander's statement into evidence and, thus, is hearsay. He derives this line of analysis from *Commonwealth v. Farris*, 251 Pa.Super. 277, 380 A.2d 486 (1977), wherein this court found objectionable the use of an oblique narrative to introduce an out–of–court statement. A police officer in that case was asked by the district attorney, "*As a result of what [the witness] told you, what if anything did you do?*" and he responded, "I arrested [the defendant]." 251 Pa.Super. at 280, 380 A.2d at 487 (emphasis added). This court found that the only reasonable conclusion the jury could draw from this exchange was that the witness told the police officer that the defendant was

5. We note that although Sergeant McLaughlin stated a part of his conversation with the bystander ("the black male come [sic] out") we find no reversible error on the basis of this limited slip. The court did what it could to prevent any amplification of the improper response by interrupting the witness, and the district attorney did not try to exploit the statement. *See Commonwealth v. Thomas*, 254 Pa.Super. 326, 385 A.2d 1362 (1978). Furthermore, Patrolman Diday had already testified to the effect that one of the males he confronted in the hallway had run out toward the front of the building.

involved in the crime. Since this inference would have been hearsay if brought into evidence directly, bringing it into evidence indirectly was condemnable as well.

The instant case is distinguishable from *Commonwealth v. Farris, supra,* however, because we find that this testimony, when taken in context, does not lead to any inescapable conclusions as to the substance of the bystander's conversation with Sergeant McLaughlin. Appellant contends that the bystander must have told the Sergeant that the man running from the building went to the pharmacy, where the officer later apprehended him. The sergeant testified, however, that after speaking to the bystander, he first drove to St. Margaret Mary's Church, about an eighth to a quarter of a mile distant, and that he then drove to the pharmacy behind which appellant was apprehended. Furthermore, the sergeant did not testify that the action he took, going to the pharmacy to seek out appellant, was taken *as a result of* his conversation with the bystander. He simply stated that he proceeded to the pharmacy subsequent to speaking with this person. This pharmacy is located only about one hundred yards from the burglarized office and is within the area one would expect to find a prowler who had disappeared just moments before. The jury could just as probably have concluded that the officer was looking in the area under his own initiative. The present testimony, unlike the testimony in *Commonwealth v. Farris, supra,* is admissible because it is simply descriptive of investigative steps, rather than an attempt to indirectly introduce the substance of an extrajudicial utterance, and hence, is not hearsay at all.

Moreover, once again in contradistinction to *Commonwealth v. Farris, supra,* this testimony was not prejudicial in its impact. Although appellant claims that the testimony was vital to the Commonwealth's case to establish that he was the man who had run from the doctors' office, we find this argument untenable. When Sergeant McLaughlin brought appellant into the police station following the incident, Patrolman Diday identified him as the man who had fled when he had accosted him earlier in the hallway of the

doctors' office. Thus, the testimony in controversy was not crucial to identify appellant, as was apparent in *Farris.*

In accord with the above reasoning, we affirm the judgment of sentence.