J-S04006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH MORRIS, | |
| Appellant | No. 5 EDA 2016 |

Appeal from the Judgment of Sentence August 12, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008140-2010

BEFORE:  SHOGAN and OTT, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 02, 2017**

Kenneth Morris ("Appellant") appeals from the judgment of sentence entered on August 12, 2015, by the Court of Common Pleas of Philadelphia County, following his conviction of criminal trespass.  We affirm.

Two men entered the home of Ms. Loretta Thomas without permission in the early morning hours of May 22, 2010.  Ms. Thomas identified one of the men as Appellant.  Appellant was charged with one count of criminal trespass as a felony of the second degree in violation of 18 Pa.C.S. § 3503(a)(1)(ii).  Immediately after waiving his right to a jury trial on June 10, 2015, the trial court found Appellant guilty of criminal trespass as a felony of the third degree, in violation of 18 Pa.C.S. § 3503(a)(1)(i), which

---

[*] Former Justice specially assigned to the Superior Court.

the trial court found to be a lesser-included offense of the charge under section 3503(a)(1)(ii). On August 12, 2015, the trial court sentenced Appellant to incarceration for a term of two and one-half to five years followed by a consecutive two-year term of reporting probation. Appellant filed a timely post-sentence motion on August 20, 2015, seeking reconsideration of his sentence. The motion was denied by operation of law on December 21, 2015. This timely appeal followed. The trial judge did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the judge retired without filing a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant presents the following questions for our consideration:

1. Did not the lower court abuse its discretion in sentencing [A]ppellant to a sentence beyond the aggravate [sic] guideline range, and by improperly using [A]ppellant's criminal history as an aggravating factor?

2. Did not the lower court err by finding sufficient evidence that [A]ppellant was the trespasser, where the victim who identified [A]ppellant as the trespasser also testified that she didn't see the trespasser's face, and where the circumstantial evidence was otherwise insufficient to establish [A]ppellant's guilt?

Appellant's Brief at 3.

We address the sufficiency challenge first, as a finding of insufficient evidence would result in a dismissal of the charge against Appellant. *See Commonwealth v. Ruffin*, 463 A.2d 1117, 1118 n.5 (Pa. Super. 1983) (stating that the appropriate remedy for insufficient evidence to support a

- 2 -

conviction is dismissal and discharge of the defendant). The basis for Appellant's sufficiency challenge is his claim that the Commonwealth failed to prove that he was the trespasser. Appellant's Brief at 22.

In reviewing the sufficiency of the evidence:

we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt. The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. As an appellate court, we must review the entire record and all evidence actually received. The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Benito***, 133 A.3d 333, 335 (Pa. Super. 2016), *appeal denied*, 141 A.3d 477 (Pa. 2016) (quoting ***Commonwealth v. Dawson***, 132 A.3d 996, 1001–1002 (Pa. Super. 2015) (internal citations and some punctuation omitted)).

Specifically regarding the issue of identity, our Supreme Court has stated:

Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.

***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973) (internal citations and quotation marks omitted).

Appellant contends that Ms. Thomas insufficiently identified Appellant as the trespasser based on his skin color, the color of his t-shirt, and his location in a nearby alley. Appellant's Brief at 22, 24. He also complains that, although Ms. Thomas had not seen the trespasser's face, she identified Appellant as the trespasser at trial, despite the absence of any physical evidence to prove his guilt. ***Id.*** at 27. Contending the Commonwealth's case is circumstantial and that he was merely present in the alley near Ms. Thomas' house, Appellant argues that the Commonwealth did not present sufficient evidence to link him to the trespass of Ms. Thomas' home. ***Id.*** at 23. We disagree.

Viewed in the light most favorable to the Commonwealth as the verdict winner, the record reveals that Appellant and Ms. Thomas knew each other from the neighborhood. N.T., 6/10/15, at 13. Appellant and his cousin had been in Ms. Thomas' house on prior occasions. ***Id.*** at 17–18. Ms. Thomas' front door was never locked because she did not have a key, and her fire-damaged back door was propped shut with a clothes dryer, a five-gallon paint container, and a board. ***Id.*** at 12, 15. The day before the crime, Appellant asked Ms. Thomas if she was going out later that night; he was wearing a grey t-shirt at the time. ***Id.*** at 18, 24, 30–31.

Ms. Thomas left her house around 1:00 a.m. and went to a nearby convenience store on May 22, 2010. N.T., 6/10/15, at 9–10. When she returned home at approximately 2:00 a.m., she noticed a man inside, peering out of the front door as if he "was looking for somebody." *Id.* at 11. As Ms. Thomas ran toward the house and up the steps screaming, the man locked the front door from inside. *Id.* at 11. Looking to the side of her house, Ms. Thomas saw two men run out of the back of the house, "leave the backyard and jump the gate;" one of the men was wearing a grey t-shirt; the other man had long hair and was wearing a hat. *Id.* at 13–14. The back door of the house had been moved from its closed position. *Id.* at 16.

Ms. Thomas contacted the police, and Officer (now Sargeant) Tamika Reid responded. N.T., 6/10/15, at 14, 33–34. Within minutes, Officer Reid observed Appellant coming out of a nearby alley behind Ms. Thomas' house; he was wearing a grey t-shirt. *Id.* at 15, 35. When the officer presented Appellant to Ms. Thomas, she identified him as the man she saw leaving her house. *Id.* at 16, 28, 33–35. Ms. Thomas also identified Appellant in court. *Id.* at 9, 11.

Appellant corroborated Ms. Thomas' testimony about his cousin living nearby, being in Ms. Thomas' house previously, and talking with her the day before about her going out that night, but he denied trespassing in her house. N.T., 6/10/15, at 38–40. He explained that his grey t-shirt was torn

in an incident with "a random person" as he was going to meet his cousin. *Id.* at 42.

As noted above, the factfinder was free to believe all, some, or none of the evidence. *Benito*, 133 A.3d at 335. The trial court chose to believe Ms. Thomas' unwavering testimony that Appellant was the man she saw peering out of her front door and fleeing through her backyard. We will not disturb the factfinder's credibility findings, which are supported by the evidence of record. Furthermore, we agree with the Commonwealth that any uncertainty regarding Ms. Thomas' in-court identification on cross-examination goes to the weight of her testimony, not the sufficiency of the evidence. Commonwealth's Brief at 12. Based on the record, we conclude that the trial court did not err in denying Appellant's sufficiency claim.

Next, we address Appellant's challenge to the length of his sentence as an abuse of the trial court's discretion. Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011). Before this Court can address a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P.

> 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015) (quoting *Allen*, 24 A.3d at 1064).

Presently, Appellant filed a timely notice of appeal and preserved this issue in a post-sentence motion. Further, Appellant's brief includes a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Appellant's Brief at 14. We now must determine whether Appellant presents a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Further:
>
> > A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Caldwell*, 117 A.3d at 768 (internal quotation marks and citations omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant claims that the trial court abused its discretion "by failing to state sufficient reasons on the record for imposing an aggravated range sentence and by improperly considering [A]ppellant's prior criminal record as an aggravating factor." Appellant's Brief at 14. According to Appellant, his sentence of "two and [one-]half to five years incarceration (30 to 60 months) . . . for criminal trespass" as a

third-degree felony "exceeded [the] top of the aggravated guideline range, which would have called for a sentence of 19 to 38 months." *Id.*[1]

This Court has held that claims of a sentencing court imposing a sentence outside of the standard guidelines without stating adequate reasons on the record presents a substantial question. *Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014) (citing *Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007)). Thus, we conclude that Appellant's claim presents a substantial question for our review, and we will review the merits of Appellant's challenge.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Caldwell*, 117 A.3d at 770 (internal quotation marks and citations omitted). Appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted).

_____

[1] Appellant's prior record score of five and offense gravity score of three warranted a minimum range sentence of six to sixteen months plus or minus three months. Basic Sentencing Matrix, 204 Pa.Code § 303.16(a).

When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Also, "a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). In particular, the sentencing court should refer to the defendant's prior criminal record, his age, personal characteristics, and his potential for rehabilitation. *Id.*; *Commonwealth v. Fullin*, 892 A.2d 843, 847–48 (Pa. Super. 2006).

We note that sentencing courts are not bound by the Sentencing Guidelines because they are merely advisory. *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted). The sentencing court "may depart from the [G]uidelines if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Id.* (internal quotation marks and citation omitted).

Our review of the record reflects that, at the time of Appellant's sentencing, the court was aware of the applicable guideline ranges. N.T., 8/12/15, at 3–4. In addition, defense counsel offered justification for a "slightly aggravated" sentence, including Appellant's personal history and

the fact that Appellant waived his right to a jury trial. *Id.* at 4–5.
Thereafter, Appellant personally addressed the court, denied committing any
crime in Philadelphia, and requested a county sentence so he could see his
family. *Id.* at 10.

In response, the trial court stated on the record as follows:

> **THE COURT**: All right. Thank you. Listen, anyone who comes in here knows that I always look to see how people can assimilate back into society and be productive members and not be a threat to society. I always look to that first. I read these reports intensely. I look at them, I do some research, I ask for information. I do everything I can to see how you can come back and not be a threat.
>
> But here's what I seen, and I've never really been taken back so much with any presentence report as yours, sir. You have 22 arrests, you have 20 convictions, you have 20 commitments, 14 violations of probations, 14 revocations. You have started committing crimes when you were 16. You have assault on a female, inflicting serious injury, at the age of 18. You have your first gun charge at the age of 18. You have a second gun charge at the age of 19. You have another assault on a female, wanton injury, personal injury, when you're 25. You have a resisting when you're 26.
>
> Everybody keeps sending you back to North Carolina, and North Carolina keeps kicking you out on the street. Suspensed [sic] sentence, probation, suspended sentence, over 20 times. You had family then, you had other alternatives then. To me, I don't know whether North Carolina is the place to get arrested because they don't seem to have ever incarcerated you for any long periods of time for the cumulative crimes that you've committed. I'm taken back. Every chance that you've gotten, 20 convictions. Not four, five, six, seven. Not, I tried to do this while I was in, or I tried to do that to better myself. I look for redeeming qualities. I have to be honest, I have not found any.
>
> I am more concerned than I have been with any case that I have had before me for sentencing about your threat to the rest of civilization where you live, I have to be honest with you.

It pains me to say that because I always look for the good in people. But you've gotten chance after chance.

With that said, I'm going to sentence you to two and a half to five years in state prison with two years reporting probation consecutive after you're out.

N.T., 8/12/15, at 10–12.

Defense counsel then asked the trial court to put its reasons for the aggravated sentence on the record. The trial court complied:

**THE COURT**: I just -- I thought I put a whole bunch of reasons on. I have the most -- I never in my life been so afraid to let someone out after so many attempts to help and so many suspended sentences, probation, and every time he gets back to North Carolina, it's something else. I put on the record the assaults on females, the resisting arrest, the gun charges. It's always something else. I could not find any redeeming qualities on him. I believe that if this man is out again, he's going to commit crimes and he's going to kill somebody eventually. I can't have that after all the times and all the breaks he's got with suspended sentences and probation.

N.T., 8/12/15, at 13.

Upon review, we discern no lack of reasons for the sentence or abuse of the trial court's discretion. Informed by Appellant's presentence report, the trial court referred to Appellant's "prior criminal record, his age, personal characteristics, and his potential for rehabilitation." *Griffin*, 804 A.2d at 10. Specifically, the trial court observed that the severity of Appellant's crimes had escalated over the years, that Appellant posed a threat to the community, and that, having been given numerous opportunities to mend his ways, Appellant failed to demonstrate any potential for rehabilitation. Necessarily, the trial court deviated from the Guidelines and imposed a

sentence which took into account "the protection of the public, the gravity of the offense as it relates to the impact on the life of the . . . community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b); **Sheller**, 961 A.2d at 190.

We reject Appellant's assertion that the trial court double-counted Appellant's criminal record as an aggravating factor. Moreover, we find no indication that the trial court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. **Caldwell**, 117 A.3d at 770.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2017